**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONAL LIFE INSURANCE COMPANY,
Plaintiff-Appellee,

v.                                                            No. 95-1310

CONAGRA INCORPORATED,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CA-91-242-C-MU)

Argued: July 10, 1996

Decided: August 5, 1996

Before WILKINSON, Chief Judge, and HAMILTON and
WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** E. Fitzgerald Parnell, III, POYNER & SPRUILL, L.L.P.,
Charlotte, North Carolina, for Appellant. Robert Burns McNeill,
HORACK, TALLEY, PHARR & LOWNDES, P.A., Charlotte, North
Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

ConAgra Incorporated appeals an order of the district court granting judgment for National Life Insurance Company in the amount of $184,977.99, plus interest and attorneys' fees. We affirm.

In April 1985, ConAgra leased warehouse space from Prudential Insurance Company through Prudential's agent, Vinson Realty Company. National Life subsequently succeeded to Prudential's interests under the lease and retained Vinson as the property manager for the premises. The lease provided for an original term of two years, beginning on May 1, 1985 and ending on April 30, 1987. Thereafter, ConAgra had the option to renew the lease for up to five additional one-year terms. With respect to the renewal option, the lease provided:

> It shall be understood that each option shall automatically have been elected 120 days prior to the commencement of such option term unless Lessee notifies Lessor in writing that Lessee does not wish to extend.

(J.A. at 21.) ConAgra renewed the lease for four years; although it was not required to provide notice of renewal, ConAgra usually did so in January or February of each year. The dispute in this case involves the final option term, May 1, 1991 through April 30, 1992.

In August of 1990, H. T. Lystrup of ConAgra informed Joe Brackett of Vinson that the leased premises were no longer adequate for ConAgra's needs. Seeking to keep ConAgra as a tenant, Brackett sent Lystrup a letter on August 24 proposing new terms that would have reduced the rent on the leased premises. Brackett cautioned Lystrup that

> for us to offer this rate reduction, we would need to know immediately your intent. This offer can only be open until

2

> September 15, 1990. After that date, we would have to
> revert to the option as originally stated in your current lease.

(J.A. at 37.) At the conclusion of the letter, Brackett stated, "Once you receive this letter, I would appreciate a telephone call from you so that we may discuss the matter further." (J.A. at 38.) The parties agree that Lystrup never responded to the offer.

In mid-December, Brackett called Lystrup again to inquire whether ConAgra intended to renew the lease for the final option term. Lystrup responded that he thought ConAgra would move its warehouse to another location, but that he couldn't be certain whether corporate headquarters would approve the move. Lystrup further told Brackett that he would not have a definite answer until the first of January. Shortly thereafter, Brackett discussed the situation with David Rabin of National Life, who told Brackett not to contact Lystrup regarding whether ConAgra intended to renew its lease. Rabin specifically instructed Brackett not to remind Lystrup of the automatic renewal provision in the lease.

ConAgra did not notify National Life that it did not intend to renew the lease prior to the deadline of December 31, 1990. On January 4, 1991, Brackett sent Lystrup a letter informing him that the lease had automatically been renewed for another year. Lystrup immediately called Brackett and expressed his shock and dismay; he followed up with a letter on January 15 that specifically informed National Life that ConAgra did not wish to renew its lease. Shortly thereafter, Brackett sent a letter to Rabin telling Rabin that Lystrup had "stubbed his toe" in failing to provide "proper" notification of nonrenewal. (J.A. at 233.) ConAgra subsequently vacated the leased premises and moved into space across the street. National Life attempted to rent the property, but did not find another lessee until February 1992.

National Life then brought the instant action in the United States District Court for the Western District of North Carolina, seeking rent due under the provisions of the lease. ConAgra asserted that National Life was not entitled to judgment based on three alternative arguments. First, ConAgra argued that it provided adequate notice of its intention not to renew for the final option period in its letter of January 15. Second, ConAgra maintained that even if its written notice

3

was inadequate, National Life had waived the written notice require-ment and ConAgra had given adequate oral notice of its intention not to renew the lease. Third, ConAgra claimed that it was entitled to equitable relief from the terms of the lease under the reasoning of Mer Properties-Salisbury v. Golden Palace, Inc., 382 S.E.2d 869 (N.C. Ct. App. 1989). The district court rejected each of these contentions in a carefully reasoned opinion. See National Life Ins. Co. v. ConAgra, Inc., No. 91-242 (W.D.N.C. Oct. 21, 1994). Having had the benefit of oral argument and the parties' briefs, and after careful consider-ation of the record and applicable law, we affirm on the reasoning of the district court.

AFFIRMED